***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Edward Garner, Jr., and the briefs and oral arguments on appeal. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence of record, the Full Commission reverses the prior Opinion and Award, and enters the following Opinion and Award.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement, and at the hearing before the Deputy Commissioner on 19 February 2001 as:
 STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant-employer.
3. The employer is self-insured, and Key Risk Management Services, Inc. is the administrator.
4. The date plaintiff was diagnosed with carpal tunnel syndrome was January 12, 2000.
5. Plaintiff's annual salary was $32,732.86, which yields an average weekly wage of $629.48.
6. Plaintiff has a 7 1/2 % permanent partial impairment rating to each hand.
7. The parties also stipulated to seventy-two pages of medical records.
 ***********
Based upon the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACTS
1. Plaintiff, who is 43 years old, was initially employed as a social worker by defendant-employer on October 19, 1994, where he worked until sometime in late December 2000 when he voluntarily left his employment. Plaintiff originally worked in the Child Protection Division, but sometime in 1999 he was transferred to the Quality Assurance Division. Plaintiff's jobs with defendant-employer involved a lot of reading and reviewing of records, and required voluminous writing.
2. Plaintiff was required to write long, detailed reports every day. Defendant-employer had a policy requiring its employees to document everything possible in writing. The unofficial motto of the Cumberland County Department of Social Services was "if it is not documented, it did not happen." Plaintiff worked on reports regarding the adoption of children that then had to be submitted to a court when completed.
3. Until August of 1998 plaintiff wrote everything longhand. Plaintiff is right-handed. In August 1998 plaintiff was issued a laptop computer and his reports from then on were done on that computer. Plaintiff was meticulous in his note-taking and documentation while he worked for defendant.
4. Prior to his employment with defendant plaintiff had no hand or wrist problems.
5. In January 2000, plaintiff's family physician, Dr. Jorge Franco, referred him to Dr. Van Tran for nerve conduction studies because plaintiff had been experiencing pain and numbness in his entire right hand.
6. Plaintiff's supervisor, Renee Gleaton, saw plaintiff on a daily basis, and plaintiff related the symptoms in his hands to his employment sometime in January 2000.
7. Dr. James Rice, board certified in the field of orthopedic surgery, initially examined plaintiff on February 9, 2000, upon a referral from Dr. Franco regarding a bilateral carpal tunnel syndrome. At that time, plaintiff indicated to Dr. Rice that he had had problems for some time. As a result of his examination of plaintiff, it was Dr. Rice's diagnosis that plaintiff had a bilateral carpal tunnel syndrome, along with a right ulnar neuropathy, for which Dr. Rice performed a right carpal tunnel release and ulnar nerve release of Guyon's canal on February 28, 2000. Dr. Rice performed a similar procedure on plaintiff's left wrist on April 10, 2000.
8. Dr. Rice released plaintiff to return to work on June 1, 2000, and assigned a 7 ½ % permanent partial impairment rating to plaintiff's left hand and a 7 ½ % permanent partial impairment rating to plaintiff's right hand.
9. Dr. Franco testified that the plaintiff's carpal tunnel syndrome was caused by plaintiff's employment with defendant and that plaintiff's employment with defendant put the plaintiff at an increased risk of developing carpal tunnel syndrome as compared to members of the general public not so employed.
10. Dr. Rice testified that he diagnosed bilateral carpal tunnel syndrome and that the repetitive activities required by the plaintiff's job could have caused the bilateral carpal tunnel syndrome.
 ***********
Based on the foregoing findings of facts, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The plaintiff's acquisition of carpal tunnel syndrome was due to causes and conditions characteristic of and peculiar to his employment with defendant-employer. Furthermore, the plaintiff's carpal tunnel syndrome is not an ordinary disease of life to which the general public not so employed is equally exposed. The plaintiff's carpal tunnel syndrome is, therefore, a compensable occupational disease. N.C.G.S. § 97-53(13).
2. As a result of his compensable occupational disease, plaintiff is entitled to receive weekly temporary total compensation at a rate of $415.45 from 12 January 2000 up through and including 1 June 2000. N.C.G.S. § 97-29.
3. As a result of his compensable occupational disease, plaintiff has a permanent partial compensation of 7 ½ % to each hand, for which plaintiff is entitled to compensation for a total of 30 weeks at a rate of $415.45. N.C.G.S. § 97-31(12).
4. Plaintiff is entitled to payment of medical expenses incurred by plaintiff as a result of the compensable occupational disease. N.C.G.S. § 97-25.
 ***********
Based upon the foregoing findings of facts and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. For plaintiff's temporary total disability, defendant shall pay temporary total compensation at a rate of $415.45 per week from 12 January 2000 up through and including 1 June 2000. This amount shall be paid to plaintiff in a lump sum subject to the attorney fee provided in paragraph 4 of this AWARD.
2. For plaintiff's permanent partial disability compensation, defendant shall pay permanent partial disability compensation at a rate of $415.45 per week for a period of 30 weeks. This amount shall be paid to plaintiff in a lump sum subject to the attorney fee provided in paragraph 4 of this AWARD.
3. Defendant shall pay all medical expenses incurred by plaintiff as a result of his compensable occupational disease.
4. A reasonable attorney fee of twenty-five percent of the compensation due under paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel in a lump sum.
5. Defendants shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________ RENE C. RIGGSBEE COMMISSIONER